CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 03 2014

JULIA C. DUDLEY, CLERK
BY:
      DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| KANDISS L. NORWOOD, ) | |
| ) | Civil Action No. 7:13CV00095 |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | By:  Honorable Glen E. Conrad |
| ) | Chief United States District Judge |
| Defendant. ) | |

Plaintiff has filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's claim for supplemental security income benefits under the Social Security Act, as amended, 42 U.S.C. § 1381 et seq. Jurisdiction of this court is pursuant to 42 U.S.C. § 1383(c)(3), which incorporates § 205(g) of the Social Security Act, 42 U.S.C. § 405(g). As reflected by the memoranda and argument submitted by the parties, the issues before this court are whether the Commissioner's final decision is supported by substantial evidence, and if it is not, whether plaintiff has met the burden of proof as prescribed by and pursuant to the Act. Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971).

The plaintiff, Kandiss L. Norwood, was born on April 8, 1988 and eventually reached the tenth grade in school, though in a special education program. Ms. Norwood has never worked on a regular and sustained basis. On June 3, 2010, plaintiff filed an application for supplemental security income benefits. In filing her application, Ms. Norwood alleged that she became disabled for all forms of substantial gainful employment on January 1, 2008 due to a learning disability, bi-polar

disorder, and borderline mental retardation. Plaintiff now maintains that she has remained disabled to the present time.

Ms. Norwood's claim was denied upon initial consideration and reconsideration. She then requested and received a de novo hearing and review before an Administrative Law Judge. In an opinion dated December 5, 2011, the Law Judge also determined that Ms. Norwood is not disabled. The Law Judge found that plaintiff suffers from severe impairments, including obesity, allergies, ear infections, sinus infections, asthma, anxiety, and borderline intellectual functioning. The Law Judge ruled that plaintiff's impairments, considered singly or in combination, are not so severe as to meet or equal a listed impairment under Appendix 1 to Subpart P of the Administrative Regulations Part 404. Despite Ms. Norwood's combination of severe impairments, the Law Judge determined that she retains sufficient functional capacity to perform a wide range of work activity. The Law Judge assessed plaintiff's residual functional capacity as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but has the following nonexertional limitations. The claimant is limited to simple work instructions that do not require reading and writing beyond simple recognition of parts and items, cannot perform piecework, and should avoid work that involves public contact.

(TR 19). Given such a residual functional capacity, and after considering plaintiff's age, education, and prior work experience, as well as testimony from a vocational expert, the Law Judge found that Ms. Norwood retains sufficient functional capacity to perform a number of specific work roles existing in significant number in the national economy. Accordingly, the Law Judge ultimately concluded that Ms. Norwood is not disabled, and that she is not entitled to supplemental security income benefits. See, generally, 20 C.F.R. § 416.920(g). The Law Judge's opinion was adopted as

the final decision of the Commissioner by the Social Security Administration's Appeals Council. Having exhausted all available administrative remedies, Ms. Norwood has now appealed to this court.

While plaintiff may be disabled for certain forms of employment, the crucial factual determination is whether plaintiff was disabled for all forms of substantial gainful employment. See 42 U.S.C. § 1382c(a). There are four elements of proof which must be considered in making such an analysis. These elements are summarized as follows: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) subjective evidence of physical manifestations of impairments, as described through a claimant's testimony; and (4) the claimant's education, vocational history, residual skills, and age. Vitek v. Finch, 438 F.2d 1157, 1159-60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

After a review of the record in this case, the court is unable to conclude that the Commissioner's final decision is supported by substantial evidence. As set forth above, the Administrative Law Judge ultimately decided this case under the fifth step of the sequential disability analysis established under 20 C.F.R. § 416.920. However, based on undisputed intelligence testing results, the court believes that the Commissioner erred in proceeding beyond the third step of the sequential disability analysis. The court finds that plaintiff's intelligence assessments document the existence of a listed impairment under Appendix 1 to Subpart P of the Administrative Regulations Part 404. Thus, the court concludes that Ms. Norwood has met the burden of proof in establishing total disability for all forms of substantial gainful employment.

Under 20 C.F.R. § 416.920(d), it is provided that if a claimant suffers from an impairment listed under Appendix 1 to Subpart P, the claimant will be found to be disabled without consideration

of factors such as age, education, and prior work experience. Rule 12.05 sets forth a listing for mental retardation. For purposes of the listing, mental retardation is characterized as follows:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

The listing goes on to provide that the level of severity is met when one of four sets of requirements is satisfied. As provided under Rule 12.05(C) of Appendix 1, one of those sets of requirements is as follows:

> A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

Thus, a claimant who qualifies as mentally retarded and who possesses a verbal, performance, or full scale IQ of 60 to 70, with a physical or other mental impairment which imposes significant, work-related limitation of function, will be found to be disabled pursuant to the provisions of 20 C.F.R. § 416.920(d).

For purposes of the provisions of Rule 12.05(C), it is essentially undisputed that Ms. Norwood experiences a "physical or other mental impairment imposing an additional and significant work-related limitation of function." As previously noted, in addition to borderline intellectual functioning, the Administrative Law Judge found that Ms. Norwood experiences severe impairments on the bases of obesity, allergies, ear infections, sinus infections, asthma, and anxiety. (TR 15). By definition, a severe impairment is one which significantly limits a claimant's capacity to perform basic work activities. See 20 C.F.R. § 416.921(a). Thus, the only issue in this case is whether Ms. Norwood experiences mental retardation which results in a valid verbal, performance, or full scale IQ measurement of 70 or less.

Ms. Norwood's levels of intellectual functioning have been objectively measured on two occasions. On May 18, 2006, Dr. Clifford Taylor, a clinical psychologist, undertook a psychological assessment at the behest of the California Department of Social Services. Ms. Norwood was 18 years old at the time of the evaluation, and apparently had not yet filed an application for supplemental security income benefits. Dr. Taylor summarized his mental status findings as follows:

> INTELLECTUAL FUNCTIONING: The claimant attained a Full-Scale IQ score of 69 placing her in the extremely low/borderline range of cognitive functioning. She was oriented to her name, address, phone number, the date, month and year. Her intelligence is estimated to be in the borderline range.
>
> ATTITUDE AND BEHAVIOR: She was cooperative with testing. She was friendly, gave effort to her ability, and was persistent on testing tasks. She did seem shy and slightly nervous. She was casually and normally dressed.
>
> ATTENTION AND CONCENTRATION: The claimant was assessed to have below normal sustained concentration evidenced by an index score of 49 on the Working Memory Index of the Wechsler Memory Scale Third Edition. She was able to repeat three digits in a backward sequence. She was distractible and required prodding to complete tasks.
>
> MOOD AND AFFECT: Her mood was euthymic and she did not appear depressed or overtly sad. She was not tearful. Her range of affect was variable and appropriate to content. She did not endorse suicidal or homicidal thoughts or plans on the four-page intake history questionnaire form.
>
> INSIGHT AND JUDGMENT: Her insight and judgment appears to be below normal due to her level of cognitive functioning and recent involvement with the legal system. She denies being influenced by illicit drugs. She has never been diagnosed with an impulse control disorder.
>
> FUND OF KNOWLEDGE: The claimant's fund of knowledge was assessed to be in the low range based on an Information subtest scaled score of 4 on the Wechsler Adult Intelligence Scale - Third edition. She did not know basic information that was age appropriate such us the direction the sun rises or the purpose of a thermometer.
>
> SPEECH: Her speech was clear and adequately modulated. No dysarthria or stuttering was observed during the examination.

> MEMORY: The claimants' delayed auditory memory was assessed to be in the extremely low range based on an index score of 46 on the Auditory Delayed Subtest of the Wechsler Memory Scale Third Edition.

(TR 471-72). Based on WAIS (Third Edition) testing, the psychologist reported a verbal IQ of 72, a performance IQ of 76, and a full-scale IQ of 69. (TR 472). Contrary to the argument submitted by the Commissioner in her motion for summary judgment, Dr. Taylor specifically stated that "the test results are considered to be valid." (TR 469). Given the variance in the IQ scores, Dr. Taylor stated that plaintiff does not meet all the criteria for mental retardation, despite a full-scale IQ score of 69. (TR 473). Dr. Taylor diagnosed borderline intellectual functioning. (TR 473). In terms of plaintiff's performance, the psychologist reported the following manifestations:

> This claimant's ability to understand, remember, and carry out job instructions was assessed to be moderately impaired as evidenced by her performance on the mental status examination and the psychological testing.
>
> Her ability to maintain attention, concentration, persistence and pace was assessed to be moderately impaired as she performed poorly on standardized measures of intelligence, learning and memory. She could repeat three numbers backward. She attained a Working Memory Composite score of 49 on the Wechsler Memory Scale - Third Edition.
>
> The claimant's ability to relate and interact with supervisors, coworkers, and the public was assessed to be moderately impaired based on her current mood quality, attitude, and willingness to follow instructions and cooperation during this contact period.
>
> Her ability to adapt to day-to-day work activities, including attendance and safety, was assessed to be moderately impaired based on her current mental status and presentation.
>
> The claimant is able to manage her own benefits.

(TR 474).

On April 20, 2010, Lin Shaner, a licensed professional counselor, completed an employment evaluation, which included administration of various psychological tests. Ms. Shaner interpreted results from a Wide Range Achievement Test as follows:

> Miss Norwood's reading and arithmetic scores fell within the low or mildly mentally retarded range but she was able to spell within the upper limits of the borderline range. Miss Norwood will be unable to work in any occupation that requires reading and writing skills and it's very unlikely she'll be able to pass the GED.

(TR 496). WAIS-IV testing produced a full scale IQ of 67. Ms. Shaner reported that plaintiff "appeared to put forth a sincere effort" in the testing. (TR 496). Ms. Shaner interpreted the overall intelligence testing results as follows:

> Miss Norwood's Verbal Comprehension Index Score fell within the lowest limits of the borderline range, while her Perceptual Reasoning Index score fell within the uppermost limits of the borderline range. Her ability to attend to and immediately recall information was within the lower limits of the Borderline range, and her ability to rapidly perform tasks requiring eye-hand coordination fell within the upper limits of the low or mild mentally retarded range. The Full Scale IQ Score fell with the mild mentally retarded range, which seems low, based on her Index scores. However, the WAIS-IV tends to project lower Full Scale IQ scores than might be expected in various situations. Miss Norwood's cognitive abilities appeared to fall within the borderline range, but her academic skills are poor and are within the low range.

(TR 496-97). Ms. Shaner offered diagnostic impressions of bi-polar disorder, borderline intellectual functioning, and asthma. (TR 500).

In summary, for purposes of Rule 12.05(C), the record includes results from two standardized intelligence tests. Both tests were undertaken outside of the process for application for supplemental security income benefits. In both instances, the results were considered valid by those administering the tests. Plaintiff's full scale IQ measurements were consistent as between the two tests. Based on a full scale IQ of 69, Ms. Norwood was considered to be in the second percentile ranking. (TR 472). Thus, the court finds that the plaintiff has met the burden in establishing the existence of a valid, "full scale IQ of 60-70" as required for the listing under Rule 12.05(C).

In her motion for summary judgment, the Commissioner argues that Ms. Norwood has not been consistently diagnosed as "mentally retarded." While it is true that both Dr. Taylor and Ms. Shaner believed that Ms. Norwood was doing well, considering her circumstances, the fact remains that both specialists measured plaintiff's full scale IQ as below 70, and both specialists considered the testing results to be valid. In the court's view, the purpose of the listings under Appendix 1 is to create standards that a claimant may meet, through the presentation of objective evidence, in order to carry the burden in establishing disability for all forms of substantial gainful employment. See Sullivan v. Zebley, 493 U.S. 521 (1990). Once the claimant satisfies those objective standards, the mere fact that treating professionals may not label the claimant's condition in a particular way, or in such a manner as to permanently impact the claimant's perception of her own abilities, appears to be of no great consequence.

The Commissioner's second argument in support of her motion presents a closer issue. The Commissioner contends that plaintiff cannot be deemed to be "mentally retarded," so as to require consideration under Rule 12.05(C), because her condition does not result in "deficits in adaptive functioning," as required in the introductory language of Rule 12.05. While the court agrees that this is a meaningful argument, the court believes that Dr. Taylor's psychological report confirms that Ms. Norwood's low intellectual function results in "deficits in adaptive functioning." The Diagnostic and Statistical Manual of Mental Disorders defines deficits in "adaptive functioning" as those which "limit functioning in one or more activities of daily life, such as communication, social participation, and independent living, across multiple environments, such as home, school, work, and community." See Diagnostic and Statistical Manual of Mental Disorders, 33 (5th ed. 2013). The United States Court of Appeals for the Fourth Circuit has also held that "deficits in adaptive functioning can include

limitations in areas such as communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety." Jackson v. Astrue, No. 10-2226, 2012 WL 580239, at *3 (4th Cir. Feb. 23, 2012) (citation omitted). While Dr. Taylor specifically noted that Ms. Norwood does not meet all of the criteria for mental retardation, he reported moderate impairment in her ability to understand, remember, and carry out job instructions and moderate impairment in her ability to maintain attention, concentration, persistence, and pace. (TR 474). He noted moderate impairment in her ability to work with others. (TR 474). Perhaps more importantly, given his observation of Ms. Norwood during the clinical examination, the psychologist noted moderate impairment in plaintiff's ability "to adapt to day-to-day work activities, including attendance and safety."

> Ms. Shaner made similar observations, reporting as follows:
>
> Based on Miss Norwood's history and her responses to this assessment, she has very poor ability to control her reactions and impulses. She has poor judgment, gets easily overwhelmed emotionally, and is unhappy and unable to control her impulses, although she indicated a desire to do so. Miss Norwood appears to have a bipolar disorder. Her therapist/psychiatrist will be able to validate this diagnosis based on additional contact with Miss Norwood, as well as her responses to medication.

(TR 498). As to plaintiff's ability to cope with life's demands and deal with other people, Ms. Shaner commented as follows:

> **Interpersonal Skills** - Miss Norwood tends to get easily frustrated and is apt to be oppositional at times. She's likely to have difficulty with directions from superiors, particularly if she perceives a tone of disrespect or criticism. Miss Norwood is apt to have difficulty dealing with conflict and is likely to overreact and possibly in a verbally aggressive manner.
>
> **Work Tolerance** - Miss Norwood has limited ability to tolerate stressful environments where there is pressure to perform a task rapidly, or where there is a need to stay focused on minor details. Occupations where there are a lot of people milling around or other distractions are likely to be very difficult for her tolerate, and she's also apt to have difficulty getting along in confrontive, negative attitude types of environments.

9

>   **Work Skills** - Miss Norwood has not developed any work skills and is limited in her ability to learn through any kind of verbal modality. In addition, occupational information or directions that are lengthy and involve multiple steps will be very difficult for her to comprehend and assimilate.

(TR 499). Considering the professional observations and assessments, which are essentially undisputed, the court concludes that plaintiff has met the burden in establishing that her markedly subaverage intellectual functioning is coupled with deficits in adaptive functioning.[1]

In summary, based on the clinical observations and objective intellectual testing results submitted by Dr. Taylor and Ms. Shaner, the court believes that plaintiff has met the burden of proof in establishing the existence of a listed impairment under Rule 12.05(C). While it is true that other medical specialists, who did not personally examine Ms. Norwood, concluded that plaintiff does not suffer from a listed impairment, the court notes that, under the administrative regulations, it is clearly contemplated that opinions of specialists who actually examine the claimant should be accorded greater weight. See 20 C.F.R. § 416.927(d). The court concludes that Ms. Norwood has met the burden of proof in establishing that she was disabled for all forms of substantial gainful employment as of the date of her application for supplemental security income benefits.

For the reasons stated, the court is constrained to conclude that the Commissioner's final decision is not supported by substantial evidence. Defendant's motion for summary judgment must be denied. Upon the finding that plaintiff has met the burden of proof as prescribed by and pursuant to the Act in establishing disability for all forms of substantial gainful employment, judgment will

---

[1] The court finds that plaintiff possesses pronounced deficits in adaptive functioning. In passing, the court observes that, given the overall framework of the listings under Rule 12.05, even if plaintiff's limitations were deemed to be no more than "moderate" in severity, such limitations would likely be sufficient for the purpose of determining "deficits in adaptive functioning," as contemplated under Rule 12.05(C). If a claimant experiences an IQ below 70, as well as marked restrictions of activities of daily living and social functioning, the claimant would apparently satisfy the criteria of Rule 12.05(D), and need not establish "physical or other mental impairments imposing additional and significant work-related limitation of function" as required under Rule 12.05(C). Thus, it seems logical that somewhat less than "marked" adaptive functioning limitations suffice for purposes of the assessment under Rule 12.05(C).

be entered in favor of the plaintiff. The Commissioner's final decision in denying supplemental security income benefits will be reversed to the extent that the denial was based on the finding that plaintiff was not disabled. However, since the Commissioner has apparently not considered whether plaintiff meets the financial eligibility requirements under the SSI benefit program, the court must remand the case to the Commissioner for an appropriate determination. An order and judgment in conformity will be entered this day. The Clerk is directed to send certified copies of this opinion to all counsel of record.

DATED: This 3rd day of March, 2014.

_____
Chief United States District Judge